Citation Nr: 1135281
Decision Date: 08/03/11 Archive Date: 09/29/11

DOCKET NO. 05-39 724 ) DATE AUG 03 2011
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to service connection for renal cancer, to include as due to herbicide exposure. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

G. A. Wasik, Counsel


INTRODUCTION

The Veteran served on active duty from October 1969 to May 1971.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2005 rating decision of the St. Louis, Missouri, Regional Office (RO) of the Department of Veterans Affairs (VA), which denied the Veteran's claim.

The issue on appeal was originally before the Board in September 2008 when the claim was denied. The Veteran appealed the Board’s denial to the United States Court of Appeals for Veterans Claims (the Court). In a November 2010 memorandum decision, the Court vacated the Board’s September 2008 decision and remanded the matter back to the Board for further proceedings consistent with the decision. 


FINDINGS OF FACT

1. The Veteran served in Vietnam during the Vietnam era and he is presumed to have been exposed during such service to an herbicide agent.

2. Renal cancer is not the result of a disease or injury in service, was not manifested within one year of service separation and is not attributable to any herbicide exposure.


CONCLUSION OF LAW

Renal cancer was not incurred in or aggravated by active military service and may not be presumed to have been incurred in service, to include as due to herbicide exposure. 38 U.S.C.A. §§ 1110, 1116 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. The Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claim, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) request that the claimant provide any evidence in his possession that pertains to the claim.

Prior to the initial adjudication of the Veteran's claim, a letter dated in December 2004 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio, at 187. The Board notes that 38 C.F.R. § 3.159 was revised, effective as of May 30, 2008, and several portions of the revisions are pertinent to the claim at issue. See 73 Fed. Reg. 23,353-23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request the claimant to provide any evidence in the claimant's possession that pertains to the claim. The October 2006 notice letter informed the Veteran that it was ultimately his responsibility to give VA any evidence pertaining to the claim and to provide any relevant evidence in his possession. See Pelegrini II, at 120-21.

Since the Board has concluded that the preponderance of the evidence is against the claim for service connection, any questions as to the appropriate disability rating or effective date to be assigned are rendered moot, and no further notice is needed. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim.

The Veteran and his representative have requested VA examination. In McLendon v. Nicholson, 20 Vet. App. 79 (2006), the Court held that VA must provide a medical examination when there is: (1) competent evidence of a current disability or persistent recurrent symptoms of a disability; (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. See also Duenas v. Principi, 18 Vet. App. 512 (2004). In the current case, the Veteran's cancer was diagnosed many years after his separation from service and there is no competent medical evidence that suggests a relationship with service. The Board finds in this case that there is no is no reliable lay or medical foundation to support the claim for service connection for renal cancer other than the Veteran's lay assertions which are not deemed to be competent evidence for reasons explained below. As set forth below, the Board finds the Veteran's assertions as to an etiologic link between his active duty service and renal cancer are without any evidentiary value. The allegations are essentially non-evidence. As set out in the Introduction, the Court remanded the issue on appeal back to the Board for consideration of whether a treatise triggered VA’s duty to assist the Veteran in obtaining a VA examination. The Veteran has argued that a 2006 National Academy of Sciences report includes sufficient evidence to trigger VA’s duty to assist the Veteran by getting an examination. The Board notes that the report in question includes the conclusion that there was insufficient evidence to determine whether there is an association between herbicide exposure and renal cancer. The Board finds this evidence is, at best, neutral, with regard to the Veteran's claim. It provides no probative evidence either supporting the claim or weighing against the claim. The Board further notes that a subsequent finding by the National Academy of Sciences actually indicates that there is no presumptive link between exposure to herbicide and renal cancer. In July 2009, the National Academy of Sciences (NAS) issued "Veterans and Agent Orange: Update 2008" (Update 2008). A determination was made by the Secretary, based upon Update 2008 and prior NAS reports, that a presumption of service connection based on exposure to herbicides in the Republic of Vietnam is not warranted for certain health outcomes to include renal cancer (kidney and renal pelvis). 75 Fed. Reg. 81332 (December 27, 2010). This evidence undercuts the Veteran's claim that the prior NAS finding suggests that there is a link between active duty and renal cancer. The Board finds there is no reliable evidence that satisfies the third criterion of the McLendon analysis to warrant an examination with nexus opinion. 

Accordingly, the Board finds that VA’s duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c) (4). No additional pertinent evidence has been identified by the appellant as relevant to the issue adjudicated by this appeal. Under the circumstances of this particular case, no further action is necessary to assist the appellant.

II. Competency and Credibility

The appellant can attest to factual matters of which he had first-hand knowledge. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, the appellant as a lay person has not been shown to be capable of making medical conclusions; thus, his statements regarding causation are not competent. Espiritu v. Derwinski, 2 Vet. App. 492, 495 (1992). Competent medical evidence means evidence provided by a person who is qualified through education, training or experience to offer medical diagnoses, statements or opinions. See Duenas v. Principi, 18 Vet. App. 512, 520 (2004). A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997); see also Bostain v. West, 11 Vet. App. 124, 127 (1998). While the appellant is competent to report what comes to him through his senses, he does not have medical expertise. See Layno v. Brown, 6 Vet. App. 465 (1994).

However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that lay evidence is one type of evidence that must be considered and competent lay evidence can be sufficient in and of itself. The Board retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). This would include weighing the absence of contemporary medical evidence against lay statements.

In Barr v. Nicholson, 21 Vet. App. 303 (2007), the Court indicated that varicose veins was a condition involving "veins that are unnaturally distended or abnormally swollen and tortuous." Such symptomatology, the Court concluded, was observable and identifiable by lay people. Because varicose veins "may be diagnosed by their unique and readily identifiable features, the presence of varicose veins was not a determination 'medical in nature' and was capable of lay observation." The Court found the veteran's lay testimony regarding varicose vein symptomatology in service represented competent evidence.

In Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit determined that lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition (noting that sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. The relevance of lay evidence is not limited to the third situation, but extends to the first two as well. Whether lay evidence is competent and sufficient in a particular case is a fact issue.

Although the appellant is competent in certain situations to provide a diagnosis of a simple condition such as varicose veins, the appellant is not competent to provide evidence as to more complex medical questions and is not competent to provide an opinion as to the etiology of his renal cancer. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007).

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). 

III. The Merits of the Claim

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. See 38 U.S.C.A. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. See 38 C.F.R. § 3.303(b). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. See 38 C.F.R. § 3.303(d).

In order to establish direct service connection for a disorder, there must be (1) medical evidence of the current disability; (2) medical, or in certain circumstances, lay evidence of the in-service incurrence of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999)).

Additionally, where a veteran served continuously 90 days or more during a period of war or during peacetime service after December 31, 1946, and a malignant tumor becomes manifest to a degree of at least 10 percent within one year from the date of termination of service, such disease shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of such a disorder during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

The Veteran alleges that he currently suffers from renal cancer that is the result of his time in service, to include exposure to herbicides while serving in the Republic of Vietnam.

If a veteran was exposed to a herbicide agent during active military, naval, or air service, certain diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116 or 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). In this regard, it is noted that a "veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent . . . unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service." See 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii).

The diseases that are related to herbicide exposure include AL amyloidosis, chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, ischemic heart disease, all B-cell leukemias, multiple myeloma, non-Hodgkin's lymphoma, Parkinson’s disease, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). See 38 C.F.R. § 3.309(e) (2010). 

Notwithstanding the foregoing, the United States Court of Appeals for the Federal Circuit has determined that the Veterans' Dioxin and Radiation Exposure Compensation Standards (Radiation Compensation) Act, Pub. L. No. 98-542, § 5, 98 Stat. 2725, 2727-29 (1984), does not preclude establishment of service connection with proof of actual direct causation. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

As noted above, renal cancer is not a condition for which the Agent Orange presumption is available. See 38 C.F.R. § 3.309(e). Nevertheless, the Board will analyze whether renal cancer is shown to have been incurred in, aggravated by or otherwise related to service.

Review of the Veteran's treatment records reveals that he was diagnosed with renal cancer. Thus, the Board acknowledges that the Veteran suffers from a current disability. A review of the Veteran's service treatment records does not reveal any complaints or treatment for renal cancer. Indeed, the Veteran himself stated that he was unaware of this condition until 2004 (over 30 years after his discharge from service). The Board finds that service connection is not warranted for renal cancer on a chronic disease presumptive basis. There is no competent evidence of record documenting the presence of the disorder to a compensable degree within one year of the Veteran's discharge. Additionally, there is no medical evidence linking the Veteran's renal cancer with a disease or injury in service, to include herbicide exposure in service. Combee, supra.

The only remaining evidence in support of the Veteran's claim are lay statements alleging that the Veteran's renal cancer is the result of his time in service. The Board acknowledges that the Veteran is competent to give evidence about what he experiences; for example, he is competent to discuss his current condition. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). He is not, however, competent to diagnose any medical disorder or render an opinion as to the cause or etiology of any current disorder because he does not have the requisite medical knowledge or training. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (stating that competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence). As there is no evidence of renal cancer in service, and no competent medical nexus statement connecting the current disability to service, the Veteran's claim must fail.

Accordingly, the Board concludes that the preponderance of the evidence is against the claim for service connection, and the benefit of the doubt rule enunciated in 38 U.S.C.A. § 5107(b) is not for application. In this case, for the reasons and bases discussed above, a reasonable doubt does not exist regarding the Veteran's claim that his renal cancer is related to service. There is not an approximate balance of evidence.


ORDER

Entitlement to service connection for renal cancer, to include as due to herbicide exposure, is denied.



____________________________________________
BARBARA B. COPELAND 
Veterans Law Judge, Board of Veterans’ Appeals
 Department of Veterans Affairs

YOUR RIGHTS TO APPEAL OUR DECISION

The attached decision by the Board of Veterans' Appeals (BVA or Board) is the final decision for all issues addressed in the "Order" section of the decision. The Board may also choose to remand an issue or issues to the local VA office for additional development. If the Board did this in your case, then a "Remand" section follows the "Order." However, you cannot appeal an issue remanded to the local VA office because a remand is not a final decision. The advice below on how to appeal a claim applies only to issues that were allowed, denied, or dismissed in the “Order.”

If you are satisfied with the outcome of your appeal, you do not need to do anything. We will return your file to your local VA office to implement the BVA's decision. However, if you are not satisfied with the Board's decision on any or all of the issues allowed, denied, or dismissed, you have the following options, which are listed in no particular order of importance: 

? Appeal to the United States Court of Appeals for Veterans Claims (Court)
? File with the Board a motion for reconsideration of this decision
? File with the Board a motion to vacate this decision 
? File with the Board a motion for revision of this decision based on clear and unmistakable error. 

Although it would not affect this BVA decision, you may choose to also: 

? Reopen your claim at the local VA office by submitting new and material evidence. 

There is no time limit for filing a motion for reconsideration, a motion to vacate, or a motion for revision based on clear and unmistakable error with the Board, or a claim to reopen at the local VA office. None of these things is mutually exclusive - you can do all five things at the same time if you wish. However, if you file a Notice of Appeal with the Court and a motion with the Board at the same time, this may delay your case because of jurisdictional conflicts. If you file a Notice of Appeal with the Court before you file a motion with the BVA, the BVA will not be able to consider your motion without the Court's permission. 

How long do I have to start my appeal to the Court? You have 120 days from the date this decision was mailed to you (as shown on the first page of this decision) to file a Notice of Appeal with the Court. If you also want to file a motion for reconsideration or a motion to vacate, you will still have time to appeal to the Court. As long as you file your motion(s) with the Board within 120 days of the date this decision was mailed to you, you will then have another 120 days from the date the BVA decides the motion for reconsideration or the motion to vacate to appeal to the Court. You should know that even if you have a representative, as discussed below, it is your responsibility to make sure that your appeal to the Court is filed on time.

How do I appeal to the United States Court of Appeals for Veterans Claims? Send your Notice of Appeal to the Court at:

Clerk, U.S. Court of Appeals for Veterans Claims
625 Indiana Avenue, NW, Suite 900
Washington, DC 20004-2950

You can get information about the Notice of Appeal, the procedure for filing a Notice of Appeal, the filing fee (or a motion to waive the filing fee if payment would cause financial hardship), and other matters covered by the Court's rules directly from the Court. You can also get this information from the Court's website on the Internet at: http://www.uscourts.cavc.gov, and you can download forms directly from that website. The Court's facsimile number is (202) 501-5848. 

To ensure full protection of your right of appeal to the Court, you must file your Notice of Appeal with the Court, not with the Board, or any other VA office. 

How do I file a motion for reconsideration? You can file a motion asking the BVA to reconsider any part of this decision by writing a letter to the BVA clearly explaining why you believe that the BVA committed an obvious error of fact or law, or stating that new and material military service records have been discovered that apply to your appeal. It is important that such letter be as specific as possible. A general statement of dissatisfaction with the BVA decision or some other aspect of the VA claims adjudication process will not suffice. If the BVA has decided more than one issue, be sure to tell us which issue(s) you want reconsidered. Issues not clearly identified will not be considered. Send your letter to: 

Director, Management, Planning and Analysis (014)
Board of Veterans' Appeals
810 Vermont Avenue, NW
Washington, DC 20420

VA FORM
AUG 2009 4597 Page 1 CONTINUED

Remember, the Board places no time limit on filing a motion for reconsideration, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision. 

How do I file a motion to vacate? You can file a motion asking the BVA to vacate any part of this decision by writing a letter to the BVA stating why you believe you were denied due process of law during your appeal. For example, you were denied your right to representation through action or inaction by VA personnel, you were not provided a Statement of the Case or Supplemental Statement of the Case, or you did not get a personal hearing that you requested. You can also file a motion to vacate any part of this decision on the basis that the Board allowed benefits based on false or fraudulent evidence. Send this motion to the address above for the Director, Management, Planning and Analysis, at the Board. Remember, the Board places no time limit on filing a motion to vacate, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision. 

How do I file a motion to revise the Board's decision on the basis of clear and unmistakable error? You can file a motion asking that the Board revise this decision if you believe that the decision is based on "clear and unmistakable error" (CUE). Send this motion to the address above for the Director, Management, Planning and Analysis, at the Board. You should be careful when preparing such a motion because it must meet specific requirements, and the Board will not review a final decision on this basis more than once. You should carefully review the Board's Rules of Practice on CUE, 38 C.F.R. 20.1400 -- 20.1411, and seek help from a qualified representative before filing such a motion. See discussion on representation below. Remember, the Board places no time limit on filing a CUE review motion, and you can do this at any time. 

How do I reopen my claim? You can ask your local VA office to reopen your claim by simply sending them a statement indicating that you want to reopen your claim. However, to be successful in reopening your claim, you must submit new and material evidence to that office. See 38 C.F.R. 3.156(a). 

Can someone represent me in my appeal? Yes. You can always represent yourself in any claim before VA, including the BVA, but you can also appoint someone to represent you. An accredited representative of a recognized service organization may represent you free of charge. VA approves these organizations to help veterans, service members, and dependents prepare their claims and present them to VA. An accredited representative works for the service organization and knows how to prepare and present claims. You can find a listing of these organizations on the Internet at: http://www.va.gov/vso. You can also choose to be represented by a private attorney or by an "agent." (An agent is a person who is not a lawyer, but is specially accredited by VA.) 

If you want someone to represent you before the Court, rather than before VA, then you can get information on how to do so by writing directly to the Court. Upon request, the Court will provide you with a state-by-state listing of persons admitted to practice before the Court who have indicated their availability to represent appellants. This information, as well as information about free representation through the Veterans Consortium Pro Bono Program (toll free telephone at: (888) 838-7727), is also provided on the Court's website at: http://www.uscourts.cavc.gov. 

Do I have to pay an attorney or agent to represent me? An attorney or agent may charge a fee to represent you after a notice of disagreement has been filed with respect to your case, provided that the notice of disagreement was filed on or after June 20, 2007. See 38 U.S.C. 5904; 38 C.F.R. 14.636. If the notice of disagreement was filed before June 20, 2007, an attorney or accredited agent may charge fees for services, but only after the Board first issues a final decision in the case, and only if the agent or attorney is hired within one year of the Board’s decision. See 38 C.F.R. 14.636(c)(2). 

The notice of disagreement limitation does not apply to fees charged, allowed, or paid for services provided with respect to proceedings before a court. VA cannot pay the fees of your attorney or agent, with the exception of payment of fees out of past-due benefits awarded to you on the basis of your claim when provided for in a fee agreement. 

Fee for VA home and small business loan cases: An attorney or agent may charge you a reasonable fee for services involving a VA home loan or small business loan. See 38 U.S.C. 5904; 38 C.F.R. 14.636(d). 

Filing of Fee Agreements: In all cases, a copy of any fee agreement between you and an attorney or accredited agent must be sent to the Secretary at the following address: 
Office of the General Counsel (022D)
810 Vermont Avenue, NW
Washington, DC 20420

The Office of the General Counsel may decide, on its own, to review a fee agreement or expenses charged by your agent or attorney for reasonableness. You can also file a motion requesting such review to the address above for the Office of the General Counsel. See 38 C.F.R. 14.636(i); 14.637(d).


VA FORM
AUG 2009 4597 Page 2 SUPERSEDES VA FORM 4597, JUN 2008, WHICH WILL NOT BE USED